**Frank MERCADO, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 00–C–001.
No. 93–CR–116.

United States District Court, E.D. Wisconsin.

June 30, 2000.

Dennis P. Coffey, Cook & Franke, Milwaukee, WI, Victoria B. Eiger, Nathan Z. Dershowitz, Dershowitz & Eiger, New York, NY, for Plaintiffs.

Assistant United States Attorney Steven M. Biskupic, United States Department of Justice, Office of the U.S. Attorney, Milwaukee, WI, for Defendants.

## DECISION AND ORDER

RANDA, District Judge.

This matter comes before the Court on the motion of Frank Mercado ("Mercado" or "petitioner") for a writ of coram nobis, or, in the alternative, for relief under 28 U.S.C. § 2255 ("Section 2255"). Pursuant to a 1995 plea agreement, Mercado was convicted and sentenced in this District on two misdemeanor charges of contempt of court. His sentence consisted of probation and community service. Mercado is serving his sentence under the supervision of the United States District Court for the Southern District of New York, which recently sentenced him to four months' imprisonment for violating the terms of his probation. That sentence is being held in abeyance pending the outcome of the instant petition. In short, Mercado has landed himself in trouble for failing to abide by the terms and conditions of his

probation and hopes to avoid the consequences of his behavior by attacking the validity of the underlying convictions and sentences here in the Eastern District of Wisconsin. For the following reasons, this Court declines to issue a writ of coram nobis or to grant relief pursuant to Section 2255.

## I.

## BACKGROUND [1]

### A. *Mercado's Role in the Altuve Trial*

Mercado provided alibi testimony at the trial of his boyhood friend, Adolph Altuve ("Altuve"), in April of 1989. According to the Government, Altuve was involved in a vast drug operation that brought cocaine and marijuana to Milwaukee from Puerto Rico in coffee cans. Altuve, the Government claimed, was a pilot who had flown drug shipments as part of the operation. Specifically, Altuve was accused of piloting a Piper Navajo airplane that had left Florida in late September or early October of 1987. Altuve had allegedly flown the airplane to Jamaica to pick up marijuana, then to Puerto Rico, where the contraband was placed in coffee cans for shipment to Wisconsin. A jury acquitted Altuve, at least in part on the basis of Mercado's testimony. Mercado, a former Marine and successful businessman who claimed to despise drug dealers, testified that he "saw" Altuve every day during September and was "in contact" with him throughout October (with the exception of one weekend). He also testified that Altuve was physically debilitated by heavy drinking and depression during this time period. The clear implication of Mercado's testimony was that Altuve had not left Florida to fly any drug missions during September or early October of 1987, as charged.

---

**1.** The facts of Mercado's case, and the underlying Altuve matter, as set forth below, are derived from the briefs submitted by the parties and from the record documents submitted

by Mercado in support of his petition. These facts are not, in any material respect, disputed.

## B. The Government's Prosecution of Mercado

Following the acquittal of Altuve, the Government investigated certain aspects of the testimony given by Mercado and three other individuals who had testified on Altuve's behalf. This investigation led to the 1993 indictment of Mercado and the others on charges of obstruction of justice and perjury. Two of Mercado's co-defendants entered into plea agreements; the third was killed prior to his arraignment. Mercado entered a plea of not guilty. His case proceeded to trial in 1994 before the Hon. Robert W. Warren of this Court. The specific charges against him were that (1) he and his co-defendants had conspired to corruptly influence the due administration of justice, contrary to 18 U.S.C. § 1503, and (2) he had committed perjury, in violation of 18 U.S.C. § 1623, when he testified concerning the whereabouts of Altuve in September and October of 1987. Mercado's attorney mounted a successful challenge to the indictment, prompting a superseding indictment, in which the perjury count focused solely on Mercado's answers concerning Altuve's whereabouts in September of 1987. At his own trial, Mercado relied on the defense that his alibi testimony in the Altuve proceedings had been literally true. Thus, for example, his testimony that he had "contact" with Altuve may have been misleading to the extent it implied face-to-face contact with Altuve in Florida. However, it was literally true because, according to Mercado, he had spoken with Altuve by telephone during this time frame. Mercado admits that his testimony "ha[d] the effect of misleading the jury ... and that he was therefore morally culpable." Petition to Vacate Judgments and Sentences Pursuant to 28 U.S.C. § 1651(a) OR 28 U.S.C. § 2255 ("Petition"), p. 2.

The Government's case against Mercado consisted of several witnesses who testified that Altuve *had* been an active drug pilot during the month of September 1987. Also, the Government elicited testimony from Mercado on cross-examination admitting that he had once procured marijuana for Altuve's personal use, and that he had once neglected to file an income tax return. The jury deliberated for three days, but was unable to reach a verdict. Accordingly, Judge Warren declared a mistrial. He then denied a motion to dismiss the charges and a motion for the entry of an acquittal. The Government signaled its intention to re-try Mercado.

## C. Mercado's Plea Agreement, Convictions & Sentences

On the eve of Mercado's second trial, in early September of 1995, Mercado and the Government reached a plea agreement. In exchange for the dismissal of the felony charges in the superseding indictment, Mercado would plead guilty to two counts of misdemeanor contempt under 18 U.S.C. § 402 ("Section 402") based upon his misleading testimony during the Altuve trial. The Government also agreed to recommend no harsher penalty than eight months' imprisonment and a $2,000 fine. The misdemeanor charges against Mercado alleged that he had given "deliberately misleading testimony" in the Altuve trial. Petition, Exhibit A (Sept. 5, 1995 Information). These charges did not fit the facts of Mercado's case exactly because Section 402, by its terms, applies to neither "contempts committed in the presence of the court" nor "contempts committed in disobedience of any lawful act, process, order, rule, decree or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States ...." 18 U.S.C. § 402. The previous Section of the United States Code, 18 U.S.C. § 401, is not so limited. However, as noted by the Government in its opposition to the instant petition, the plea was "clearly a compromise" that not only served the interests of justice, but benefitted Mercado as well. The Government notes:

> The charges were structured for the defendant's benefit; he was allowed to plead under [Section 402] (as opposed to Section 401) because Section 402 was a six-month misdemeanor and did not re-

quire the application of the Sentencing Guidelines. Had Mercado pled under Section 401, the Guidelines would have mandated a cross-reference to the underlying charge (perjury and drugs) which would have resulted in a multi-year prison sentence.

First Response of the United States to Defendant's Motion Under Section 1651(a) or 2255 ("Government's First Response"), p. 2.

On November 22, 1995, Judge Warren conducted a sentencing hearing, at which Mercado was represented by counsel. Petition, Exhibit C. Mercado continued to deny that he had committed perjury, but he admitted that he had "allowed [him]self to be used" by the Altuve defense and specifically that he had given deliberately misleading testimony under oath during Altuve's trial. Petition, Exhibit C (p. 65). In short, Mercado admitted that there was a sufficient factual basis for the lesser criminal misdemeanor charges to which he was pleading guilty.

Judge Warren sentenced Mercado to two years' probation on each count, to run concurrently, and ordered five hundred hours of community service, a $10,000 contribution to the Boys and Girls Club, and forty five days in a "jail type facility." Petition, Exhibit C (pp. 96–100). During the sentencing proceedings, Judge Warren stated that Mercado's case was a "very difficult [one] for a sentencing judge" and alluded to his own misgivings about the "imprecision" of the Government's case against Mercado. Petition, Exhibit C (pp. 93–96). Judge Warren believed that "there was a little smell of vengeance" in the Government's prosecution of Mercado following the acquittal of Altuve. *Id.* It is clear from these and other statements on the record that Judge Warren would not have found Mercado guilty of perjury had he been the finder of fact in the case. However, to the extent Judge Warren's views of guilt or innocence are relevant to

the instant petition (Mercado seems to think they are), it bears keeping in mind that Judge Warren also denied several motions for a directed verdict. He was therefore of the view that a rational trier of fact could have found Mercado guilty of obstruction of justice and perjury. More to the point, Judge Warren was clearly satisfied, for purposes of sentencing, that Mercado's conduct in "misleading the people" (*i.e.*, the jurors in the Altuve trial) had been reprehensible. *Id.*[2]

Mercado chose not to appeal the convictions entered pursuant to his plea agreement. Likewise, there was no appellate challenge to the sentence imposed by Judge Warren.

### D. *Mercado's "Lawless" Approach to Probation*

On September 4, 1996, Mercado was found to have violated the anti-drug conditions of his probation. An amended judgement was entered re-starting the clock on his two-year probation term and increasing his period of confinement in a "jail-type facility" from forty-five to sixty days. Petition, Exhibit E. Further modifications were necessary in April of 1997 and August of 1998, reflecting Mercado's missed appointments with his probation officer and his failure to complete community service. Petition, Exhibit F; R: 292 (Aug. 27, 1998 order extending probation). Mercado's excuses for his failure to complete community service were, to say the least, inventive. In 1998, he claimed that a representative of one community service organization would only credit his hours of service if Mercado gave him a bribe (which, Mercado claims, he refused to do). Petition, Exhibit N (¶ 33).

In 1999, Mercado's probation was transferred to the Southern District of New York. Not long after the transfer, the probation office there sought to have Mercado's probation revoked on the grounds that

---

2. To speculate concerning how Judge Warren would view Mercado's situation today, after the passage of nearly five years and numerous

probation violations by Mercado (discussed below), is not only pointless but presumptuous.

Mercado had (1) failed to report to his probation officer, (2) traveled outside the jurisdiction without permission, and (3) failed to complete his community service. Petition, Exhibit H. Mercado showed up late for his revocation hearing on May 7, 1999 and was reprimanded by the Hon. William H. Pauley for his "lawless" approach to probation. *Id.* Judge Pauley found Mercado guilty of the probation violations, but gave Mercado thirty days in which to complete his community service so as to avoid jail. *Id.* Mercado again failed to comply, for which he was sentenced to a four-month term of imprisonment. Petition, Exhibit I (pp. 39–40). Probation, in Judge Pauley's view, had failed and Mercado had "manipulated" the system. *Id.* Later, the Southern District stayed Mercado's sentence until March 24, 2000 so that Mercado could have medically necessary eye surgery. Faced with a surrender date of March 25, 2000, and unable to persuade the District Court for the Southern District of New York to reconsider its ruling, Mercado decided to mount a collateral attack in this Court on the underlying convictions and sentences from 1995. The District Court in New York has further stayed Mercado's term of imprisonment while this Court addresses the issues raised by Mercado in his petition for coram nobis relief.

## II.

## ANALYSIS

■ As an initial matter, this Court is not sitting in judgment on Judge Pauley's recent decision to sentence Mercado to a four-month term of imprisonment for failing to honor the terms of his probation. It would be inappropriate for this Court to find fault with Judge Pauley's sentence, although Mercado invites the Court to do just this when he complains about the procedures employed at his most recent hearing in the Southern District (*e.g.*, the alleged denial of his right of allocution). Petition, p. 4. The real issue before this Court is whether the convictions underlying Mercado's probation are valid. More precisely, the issue is whether or not Mer-

cado may challenge the validity of those convictions, which are now almost five years old, by means of a petition for a writ of coram nobis.

■ The courts are increasingly presented with petitions that are deliberately styled as coram nobis petitions to circumvent the procedural requirements which apply to petitions under Section 2255, including the one year statute of limitations set forth therein. *See, e.g., Cooper v. United States,* 199 F.3d 898, 901 (7th Cir. 1999) (observing that coram nobis is not a "substitute" for Section 2255). Here, there is at least a legitimate argument for seeking coram nobis relief because Mercado is not "in custody" and therefore the provisions of Section 2255 do not apply. *Howard v. United States,* 962 F.2d 651, 653 (7th Cir.1992) ("a defendant must be in custody under a court sentence to pursue a writ of habeas corpus"). If Mercado is entitled to relief at all, it is in the form of a writ of coram nobis. Such a writ falls within the scope of the All Writs Act, 28 U.S.C. § 1651, which authorizes the federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *United States v. Bush,* 888 F.2d 1145, 1147 (7th Cir.1989) (citing *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954)). Because "frequent use of this writ would discard the benefits of finality," however, "it has been reserved for compelling events." *United States v. Keane,* 852 F.2d 199, 202 (7th Cir.1988), *cert. denied,* 490 U.S. 1084, 109 S.Ct. 2109, 104 L.Ed.2d 670 (1989). A writ of coram nobis is an "extraordinary remedy," *Howard,* 962 F.2d at 653, and is limited to correcting errors " 'of the most fundamental character.' " *Bush,* 888 F.2d at 1147 (quoting *Morgan,* 346 U.S. at 512, 74 S.Ct. 247). The Seventh Circuit has stated that "[c]ontemporary coram nobis matters only after custody expires," but it has not ruled out coram nobis relief in situations such as this one, where custody is yet to occur. *See Kiger v. United*

*States,* 315 F.2d 778, 780 & n. 3 (7th Cir.), *cert. denied,* 375 U.S. 924, 84 S.Ct. 270, 11 L.Ed.2d 166 (1963). It has also recognized that a writ of coram nobis may be appropriate in cases where the petitioner can show that "the indictment does not state an offense." *See Bush,* 888 F.2d. at 1146.

■ Mercado argues that the underlying convictions must be vacated because the information fails to charge a crime. This is so, according to Mercado, because Section 402, by its express terms, does not apply to contempts occurring within the presence of the Court (*i.e.,* Mercado's misleading courtroom testimony). Mercado's argument as to the meaning of the statute is probably correct, but the Court is skeptical that the substitution of lesser misdemeanor charges, under the circumstances surrounding Mercado's plea, was an "error of the most fundamental character." *Morgan,* 346 U.S. at 512, 74 S.Ct. 247. Indeed, to the extent that the use of Section 402 was erroneous, the error clearly benefitted Mercado, who thus avoided a harsher sentence. The Court does not believe these are the kind of "compelling" circumstances in which a writ of coram nobis should be issued. Even if the Court believed otherwise, however, it would deny coram nobis relief on the basis that Mercado waived his arguments concerning Section 402 by not raising them earlier.

■ Mercado views coram nobis as a form of relief that may be used, without regard to any time limitation, for the purpose of preventing what his counsel describes as the "unanticipated effects" of an "old" judgment. Petition, p. 11. The only support Mercado offers for this view is a Fifth Circuit case which states that "[f]ailure to charge an offense may be raised for the first time *in a § 2255 petition* because such an error divests the sentencing court of jurisdiction." *United States v. Harper,* 901 F.2d 471, 473–74 (5th Cir.1990) (em-

phasis added). The Court cannot agree with Mercado's open-ended view of coram nobis and remain faithful to the law of this Circuit. Indeed, the Seventh Circuit has observed that "[j]udicially-created standards ... severely circumscribe the availability of the writ [of coram nobis]." *United States v. Darnell,* 716 F.2d 479, 481 n. 5 (7th Cir.1983), *cert. denied,* 465 U.S. 1083, 104 S.Ct. 1454, 79 L.Ed.2d 771 (1984). One such limitation concerns the timing of a challenge which is brought by way of a coram nobis petition. It is true that Section 1651, in contrast with Section 2255, does not specify a period of limitations on actions for the writ of coram nobis. However, under Seventh Circuit law, "a flexible, equitable time limitation based upon the doctrine of laches" does apply to petitions for coram nobis relief. *Id.* In light of society's "substantial interest in the finality of judgments," coram nobis relief can only be justified " 'under circumstances compelling such action to achieve justice' *and only where 'sound reasons' exist for the failure to seek appropriate earlier relief." Id.* at 480–81 (quoting *Morgan,* 346 U.S. at 511–12, 74 S.Ct. 247) (emphasis added); *see also Kiger,* 315 F.2d at 779.[3] With these principles in mind, it is obvious that "coram nobis is not a substitute for appeal." *Darnell,* 716 F.2d at 480–81 n. 5. Likewise, "[c]laims that could have been raised by direct appeal are outside the scope of the writ." *United States v. Keane,* 852 F.2d 199, 202 (7th Cir.1988). Indeed, because society's interest in finality is so strong, a coram nobis petition is barred unless it "presents questions that could not have been resolved *at the time of conviction." Bush,* 888 F.2d at 1146 (emphasis added); *Howard,* 962 F.2d at 653 n. 2. The Court cannot find, anywhere in the law of this Circuit, or in the Supreme Court's few pronouncements on coram nobis, an exception to the foregoing rules for

---

**3.** "The doctrine of laches protects against 'sandbagging' and ensures that coram nobis relief will not be granted where a petitioner's inexcusable delay in raising his claim has prejudiced the government. These safeguards

against abuse of the writ serve essentially the same function as the cause and prejudice standard [applicable in Section 2255 cases]." *Darnell,* 716 F.2d at 481 n. 5.

cases like Mercado's, which attack the legal sufficiency of an indictment or information.

The argument that Section 402 does not "fit the crime" could have been raised at the time of Mercado's plea. It could have been raised later by way of an appeal. Mercado did not raise the argument at either juncture. Instead, he has waited nearly five years to find fault with the information that formed the basis for his plea agreement. He has not come forward with *any* reasons, much less "sound" ones, for his failure to raise an earlier challenge to his convictions based on the alleged impropriety of charging him with violations of Section 402. Admittedly, Mercado has a greater incentive to challenge his convictions today than he did in 1995 because he now faces four months in prison for violating the terms of his probation. These circumstances are of his own making, however, and do not qualify as "sound reasons" for failing to bring an earlier challenge. Mercado's newfound concern with the validity of his 1995 convictions is clearly motivated by a desire to avoid the consequences of his more recent conduct. In any event, because the arguments that he now relies upon with respect to Section 402 could have been raised earlier, they are waived, and, accordingly, a writ of coram nobis will not issue from this Court.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Mercado's petition is denied and his case is dismissed.

**SO ORDERED.**